UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/8/14
```

------------------------------------------------------- X

DIOMEDES MARTINEZ-DONE,

                    Plaintiff,

  - against -

DIANE MCCONNELL, in her official
capacity as Assistant Field Office Director
for U.S. Immigration and Customs
Enforcement, et al.,

                Defendants.

**OPINION AND ORDER**

14 Civ. 3071 (SAS)

------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On March 26, 2014, Diomedes Martinez-Done, a lawful permanent resident of the United States since 1983, was taken into custody by Immigration and Customs Enforcement officials ("ICE"). At the time, Martinez was serving five years of probation in connection with a 2012 state conviction — his second — for drug possession.

In light of his criminal history, ICE determined that Martinez was subject to mandatory detention under section 236(c) of the Immigration and Nationality Act ("INA"). Section 236(c)(1) provides that the Attorney General

"shall take into custody" any alien who has committed a qualifying offense — such as drug possession — "when the alien is released."[1]  Aliens taken into custody pursuant to section 236(c) may not seek review of detention decisions.

Martinez argues that if he is removable, it is not pursuant to section 236(c), as the government contends, but rather to section 236(a).  Under the latter provision, detention is not mandatory; aliens are entitled to individualized bond hearings to determine whether release is appropriate during the pendency of removal proceedings.  That is the remedy Martinez seeks here.

Martinez offers three theories for why section 236(c) does not govern his case.[2]  *First*, Martinez argues that he never served a custodial sentence — and therefore he was never "released" from custody as section 236(c)(1) requires.  *Second*, Martinez argues that he was not taken into custody "*when* [he was] released*,*" thereby violating the implicit timeliness requirement of section 236(c).  *Third*, Martinez argues that mandatory detention under section 236(c), as applied to his case, offends the Due Process Clause of the U.S. Constitution.

--------

[1]      8 U.S.C. § 1226(c)(1).

[2]      Martinez is not the first to make these arguments.  A number of similar habeas cases have been decided in recent years.  *See, e.g., Araujo-Cortes v. Shanahan*, No. 14 Civ. 4231, 2014 WL 3843862, at *5-6 nn.5 & 6 (S.D.N.Y. Aug. 5, 2014) (collecting recent cases from the Southern District of New York that have examined the meaning of the "when . . . released" clause of section 236(c)).

For the reasons set forth below, Martinez's request for an individualized bond hearing is GRANTED.

## II.     BACKGROUND

In 1983, at the age of twenty-five, Martinez was admitted to the United States as a lawful permanent resident.  Since then he has lived with his family in New York.

In 2003, Martinez pled guilty to criminal possession of cocaine in the third degree — which was subsequently modified to criminal possession of a controlled substance in the fourth degree.[3]  He was sentenced to five years of probation.[4]  In 2008, Martinez was arrested once again for drug possession, and in 2012, he was found guilty of possession of cocaine in the fifth degree.[5]  He was

---

[3]     *See* 2006 Certificate of Disposition Indictment ("2006 Cert."), Exhibit ("Ex.") 2 to Government's Return to Habeas Petition ("Ret."), at 4.  In 2006, presumably on the advice of counsel, Martinez withdrew his original plea from 2003 and re-pleaded to criminal possession of cocaine in the fourth degree. Because of the revised plea, there is some imprecision in the parties' references to Martinez's first conviction.  Some submissions call it the "2003 conviction." Others call it the "2006 conviction."  Both formulations are referring to the same underlying offense:  the criminal possession — initially in the third degree, and after the 2006 revised plea, in the fourth degree — for which Martinez was arrested in 2002.

[4]     *See id.*

[5]     *See* 2012 Certificate of Disposition Indictment, Ex. 3 to Ret., at 3.

sentenced to five years of probation.[6]  Both convictions are grounds for removal

under the INA.[7]

   In August and September of 2004, while serving his initial

probationary sentence, Martinez was remanded to the New York City Department

of Corrections and spent forty-one days in custody.[8]  The reason for the remand is

uncertain.  Neither party has been able to produce a document that directly explains

why Martinez was taken into custody.  The government argues that it was

"presumably" for violating the terms of his probation[9] — which, if true, would

mean that Martinez's first conviction resulted in a period of custody despite the

fact that his sentence was non-custodial.  In the absence of further information, I

conclude that the most likely explanation for the remand is that Martinez violated

his probation.[10]

---

  [6] *See id.*

  [7] *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana" may be deported).

  [8] *See* 2006 Cert. at 3. *See also id.* at 12-13 (the booking detail for Martinez's forty-one day custodial period).

  [9] Ret. at 2.

  [10] The best evidence for this explanation is that the same indictment number — 468-2003 — appears on (1) the record of Martinez's 2004 remand and

On March 26, 2014, nearly six years after his most recent arrest, and nearly ten years since he was released from post-conviction custody, ICE officials took Martinez into custody and initiated removal proceedings.[11]  In light of Martinez's criminal history, ICE determined that he was subject to mandatory detention under section 236(c).[12]  Accordingly, Martinez has been in detention since March 2014, awaiting a removal decision.  On April 30, 2014, Martinez filed a petition for a Writ of Habeas Corpus.  He seeks an individualized hearing to determine whether detention should continue.

## III.   APPLICABLE LAW

### A.   Section 236 of the INA

Section 236 of the INA regulates the detention of aliens who are facing removal due to past criminal convictions.  Section 236(a) lays out a general framework for detention.  It authorizes the Attorney General to "arrest[] and detain[]" criminal aliens "pending a decision on whether the alien is to be removed from the United States."[13]  It also provides for individualized review of detention

---

(2) the record of Martinez's 2006 re-sentencing in connection with his revised plea. *See* 2006 Cert. at 3-4.

[11]     *See* Notice to Appear, Ex. 4 to Ret.

[12]     *See* Notice of Custody Determination, Ex. 5 to Ret.

[13]     8 U.S.C. § 1226(a).

decisions.  Aliens detained pursuant to section 236(a) may be released on bond,[14] or on conditional parole,[15] while their immigration case is resolved.

Section 236(c) carves out an exception to the general framework set forth in section 236(a).  It makes pre-removal detention mandatory — without the benefit of individualized review — for aliens who commit particularly serious crimes.[16]  Procedurally, section 236(c) provides that

> [t]he Attorney General shall take into custody any alien who [has been convicted of a qualifying offense] *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.[17]

The italicized clause, "when the alien is released," is a source of persistent confusion.  There has been extensive litigation, in this District and elsewhere, about the meaning of the word "when."[18]  Martinez, like other removable aliens who have sought habeas relief from mandatory detention, maintains that section

---

[14]    *See id.* § 1226(a)(2)(A).

[15]    *See id.* § 1226(a)(2)(B).

[16]    *See id.* § 1226(c)(1)(A)-(D) (enumerating the categories of offense that trigger mandatory detention).

[17]    *Id.* § 1226(c)(1) (emphasis added).

[18]    *See Lora v. Shanahan*, No. 14 Civ. 2140, 2014 WL 1673129, at *10 (S.D.N.Y. Apr. 29, 2014) (noting that "the meaning of the word 'when' in [section 236(c)] has been litigated extensively in federal courts").

236(c) contains an implicit timeliness requirement.  In essence, Martinez argues that the word "when" requires that mandatory detention should begin at or around the time of release from criminal confinement.[19]  If ICE unreasonably delays the process of taking an alien into custody, section 236(c) cannot govern the alien's detention.

The government, on the other hand, relies on a 2001 opinion from the Board of Immigration Appeals ("BIA")[20] to argue that "when" does not "set a deadline" for the onset of mandatory detention.[21]  Rather, it "creat[es] a precondition for the Department of Homeland Security to exercise its mandatory detention authority,"[22] and that such authority, once triggered, extends indefinitely through time.  Judge Paul Engelmayer of this District recently labeled these views the "time-limiting" construction (Martinez's) and the "duty-triggering" construction (the government's).[23]  I adopt those labels here.

Judges in this District are divided as to which construction of 236(c) is

---

[19]     *See, e.g.*, *Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010).

[20]     *See Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001).

[21]     *Straker v. Jones*, 986 F. Supp. 2d 345, 352 (S.D.N.Y. 2013).

[22]     *Id.*

[23]     *Id.* at 352-53.

correct. Six Judges have adopted the "duty-triggering" construction.[24] Five have adopted the "time-limiting" construction.[25] Meanwhile, the Third and Fourth Circuits have both endorsed the "duty-triggering" construction,[26] while the First Circuit has expressed support — albeit in dictum — for the "time-limiting" construction.[27] Despite the split among lower courts, the Second Circuit has yet to address the question.

The parties also dispute the meaning of the word "release." Martinez argues that an alien is only "released" for purposes of section 236(c) if he serves —

---

[24]   *See id.* (Judge Engelmayer). *See also Johnson v. Orsino*, 942 F. Supp. 2d 396 (S.D.N.Y. 2013) (Judge Castel); *Santana v. Muller*, No. 12 Civ. 430, 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012) (Judge Crotty); *Guillaume v. Muller*, No. 11 Civ. 8819, 2012 WL 383939 (S.D.N.Y. Feb. 7, 2012) (Judge Griesa); *Mendoza v. Muller*, No. 11 Civ. 7857, 2012 WL 252188 (S.D.N.Y. Jan. 25, 2012) (Judge Sullivan); *Gomez v. Napolitano*, No. 11 Civ. 1350, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (Judge Rakoff).

[25]   *See Araujo-Cortes*, 2014 WL 3843862 (Judge Hellerstein). *See also Louisaire*, 758 F. Supp. 2d at 235-37 (Judge McMahon); *Lora*, 2014 WL 1673129 (Judge Peck); *Aparicio v. Muller*, No. 11 Civ. 437 (S.D.N.Y. Apr. 7, 2011) (oral decision) (Judge Kaplan); *Jean v. Orsino*, No. 11 Civ. 3682 (S.D.N.Y. Jun. 30, 2011) (oral decision) (Judge Swain). This split is not unique to the Southern District. It is reflected in district courts throughout the country. *See Straker*, 986 F. Supp. 2d at 352-53 (collecting cases).

[26]   *See Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012). *See also Sylvain v. Attorney Gen.*, 714 F.3d 150 (3d Cir. 2012).

[27]   *See Saysana v. Gillen*, 590 F.3d 7, 16-18 (1st Cir. 2009) (expressing skepticism about the government's sweeping interpretation of mandatory detention power under section 236(c)).

and is released from — a custodial sentence.  Therefore, mandatory detention is

inappropriate for aliens who serve purely non-custodial sentences for removable

offenses.  Two courts in this District have recently adopted this interpretation.[28]

The government disagrees.  Relying on BIA opinions from 2000 and 2007, it

argues that the word "release" refers not only to release from physical custody

following a sentence, but also to release from "physical custody following

*arrest*."[29]  In other words, if an alien was arrested for a removable offense, that

alone is sufficient to satisfy that "release" requirement of section 236(c) — and the

alien may be subject to mandatory detention.

### B.    *Chevron* Deference

Agency interpretations of federal statutes are reviewed under the

deferential framework set out in *Natural Resources Defense Council v. Chevron*.[30]

The first prong of *Chevron* asks whether a statutory provision is ambiguous:  that

---

[28]    *See Straker*, 986 F. Supp. 2d at 357-60; *Lora*, 2014 WL 1673129, at
*10-12. *But see Gonzalez-Ramirez v. Secretary of U.S. Dep't of Homeland Sec.*,
529 Fed. App'x 177, 181 (3d Cir. 2013) (holding that "because [the alien] was
released from pre-conviction custody following his arrest, he was subject to
mandatory detention" under section 236(c)).

[29]    *Matter of West*, 22 I. & N. Dec. 1405, 1410 (BIA 2000).

[30]    467 U.S. 837 (1984).

is, "whether Congress has directly spoken to the precise question at issue."[31]  If so, Congressional will controls.  If not, the analysis proceeds to *Chevron*'s second prong:  whether the agency has construed the provision "reasonabl[y]."[32]  To abrogate an agency's interpretation, it is not enough for the Court to disagree. Rather, it must find the agency's interpretation "[im]permissible."[33]

### C.   The Due Process Clause of the Fifth Amendment

Although constitutional protections are more attenuated for aliens than they are for citizens,[34] removal proceedings must respect the requirements of due process.[35]  Detention is a "constitutionally permissible part of [the removal] process."[36]  But detention cannot persist indefinitely without review.

---

[31]     *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) (citing *Chevron*, 467 U.S. at 842).

[32]     *Chevron*, 467 U.S. at 843.

[33]     *National Cable & Telecom. Ass'n v. Brand X*, 545 U.S. 967, 984 (2005).

[34]     *See Demore v. Kim*, 538 U.S. 510, 521 (2003) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.") (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

[35]     *See id.* at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

[36]     *Aikens v. Reno*, 330 F.3d 547, 547 (2d Cir. 2003) (citing *Demore*, 538 U.S. at 531).

In *Zadvydas v. Davis*,[37] the Supreme Court held that post-removal detention offends the Due Process Clause if it exceeds six months.  The Court expressed concern that post-removal detention — which typically occurs while the government is having difficulty finding placement for an alien abroad — could easily become "indefinite" in the absence of constitutional constraint.[38]  It settled on a six-month window because at that point, "there is [no longer a] significant likelihood of removal in the reasonably foreseeable future."[39]  As a result, the Court held that after six months, it should become the government's burden to offer "sufficient evidence" demonstrating that imminent removal is still likely.[40]

Two years after *Zadvydas*, in *Demore v. Kim*, the Supreme Court addressed an analogous challenge with respect to pre-removal detention.  After spending six months in mandatory detention pursuant to section 236(c), Kim petitioned for a Writ of Habeas Corpus, requesting an individualized bond hearing. He argued that it would violate *Zadvydas*'s six-month rule for his detention to continue without review.

------------------------

[37]     533 U.S. 678 (2001).

[38]     *Id.* at 682.

[39]     *Id.* at 701.

[40]     *Id.*

The Court rejected Kim's argument. Emphasizing the fact that in most cases pre-removal detention only lasts between one and a half and five months,[41] the Court held that pre-removal detention does not pose the same danger of "indefinite[ness]" as post-removal detention.[42] Unlike the post-removal detention, pre-removal detention has a natural stopping point: the determination that an alien is or is not removable. Therefore, bright-line constraints are unnecessary to ensure expediency.[43]

## IV.    JURISDICTION

This Court is authorized to review petitions for a Writ of Habeas Corpus under 28 U.S.C. §§ 1331 and 2241, and ultimately under Article I, § 9 of the U.S. Constitution.[44]

--------------------------------------

[41]    *See Demore*, 538 U.S. at 530.

[42]    *Id.* at 529 ("[P]ost-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point.") (citing *Zadvydas*, 533 U.S. at 697).

[43]    At the same time, Justice Anthony Kennedy — casting the fifth vote in *Demore* — noted in his concurrence that the Court's holding should not be read to foreclose due process challenges to pre-removal detention. *See id.* at 531-33 (Kennedy J., concurring) ("Were there to be an unreasonable delay by [ICE] in pursuing and completing deportation proceedings . . . it could be necessary [] to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

[44]    Section 236 of the INA does not contravene this authority. *See Demore*, 538 U.S. at 516-17 (clarifying that although section 236(e) of the INA

## V.    DISCUSSION

### A.    Was Martinez "Released"?

Because neither of his convictions resulted in a custodial sentence,
Martinez maintains that he was never "released" within the meaning of section
236(c).  Consequently, he argues that his case is governed by section 236(a).  The
government reads the statute differently.  It argues that "release" under section
236(c) does not require release from a custodial sentence.  Rather, the requirement
can be satisfied by the custodial period — and subsequent release — that
accompanies arrest.  For support, the government relies on a 2000 BIA opinion,
*Matter of West*, which held that "release" refers not only to release from physical
custody following conviction, but also to release from "physical custody following
*arrest.*"[45]

---

precludes review of the Attorney General's "discretionary judgment," it does not
preclude review of habeas petitions).  *See also Louisaire*, 758 F. Supp. 2d at 234;
*Henderson v. I.N.S.*, 157 F.3d 106, 119-22 (2d Cir. 1998) (discussing the
presumption against stripping courts of habeas jurisdiction).

[45]    *West*, 22 I. & N. Dec. at 1410 (emphasis added).  *Accord Matter of
Kotliar*, 24 I. & N. Dec. 124 (BIA 2007).  The BIA found support for this
interpretation in one of the phrases modifying the release requirement:  "without
regard to whether the alien may be arrested or imprisoned again for the same
offense."  8 U.S.C. § 1226(c)(1).  Although the BIA did not explicate its reasoning,
presumably the logic was that because "only an alien who has not yet been
convicted could be arrested again for the same offense," release must include
release following an arrest (as opposed to release following a sentence).
*Straker*, 986 F. Supp. 2d at 359.

-13-

In Martinez's case, both interpretations produce the same result. Because he spent time in custody in connection with a removable offense — the 2004 remand — Martinez was "released" even under his interpretation of the requirement. That being said, the meaning of "release" still bears on the ultimate disposition of the case, because the issue of *when* Martinez was released depends, in the first instance, on what qualifies as "release." In other words, to fully address Martinez's grievance about delay in the onset of his immigration custody, it is necessary to decide when the clock began to run.[46]

According to the government, the BIA's construction of "release" in *Matter of West* warrants *Chevron* deference. But even assuming that *Chevron* applies here — which is far from clear given the threadbare nature of the

---

[46]     Two other considerations counsel in favor of addressing the "release" issue, despite the fact that it does not control the outcome of Martinez's case. *First*, the facts here truly are ambiguous — even after numerous letters and conferences, neither party has been able to furnish conclusive proof of the basis for Martinez's 2004 remand.  *See* 9/10/14 Transcript of Telephone Conference. *See also* 9/17/14 Letter from Plaintiff to the Court; 9/17/14 Letter from Defendant to the Court. *Second*, there is a continuing split of authorities on the question. Two recent opinions from this District have adopted the narrow construction urged by Martinez. *See Straker*, 986 F. Supp. 2d at 357-60; *Lora*, 2014 WL 1673129, at *10-12. But the Third Circuit has sided with the government's interpretation. *See Gonzalez-Ramirez*, 529 Fed. App'x at 181 ("[B]ecause [the alien] was released from pre-conviction custody following his arrest, he was subject to mandatory detention."); *Sylvain*, 714 F.3d at 151 (holding that an alien's release from the [] arrest that led to his conviction . . . fulfill[s] the release requirement [of section 236(c)]").

underlying BIA opinion[47] — deference is only appropriate for "reasonable"
constructions of ambiguous statutes.[48]

      The word "release" appears twice in section 236(c)(1). *First*, it
appears in the clause "when the alien is released." *Second*, it appears in the clause
"without regard to whether the alien is released on parole, supervised release, or
probation." It is a cardinal rule of statutory interpretation that "[a] term appearing
in several places in a statutory text is generally read the same way each time it
appears."[49] In other words, "released" should have a consistent meaning in both
the "when . . . released" clause and the "without regard" clause.

      The government's position cannot meet this requirement. While its

---

[47]    *See Straker*, 986 F. Supp. 2d at 358 (noting that "[t]he BIA's
decisions are particularly unworthy of deference, in that *West* contained little
reasoning in support of its conclusion"). Beyond being threadbare, the BIA's
reasoning is also flawed. Although it is conceivable that the "arrested . . . again for
the same offense" language tilts in favor of construing "release" to include post-
arrest release, that is not the only plausible interpretation of the clause. In fact,
there are some circumstances in which the "arrested . . . again for the same
offense" language is compatible with the post-conviction understanding of
"release." For example, certain offenses incorporated into section 236(c) trigger
removal even if they were committed prior to the alien's entry into the United
States. *See id.* at 359. Under section 236(c)(1)(B), mandatory detention is
compulsory for aliens convicted of certain crimes in *foreign* jurisdictions — even
if those aliens could be (at least theoretically) "arrested . . . again for the same
offense" in the United States. *See id. See also* 8 U.S.C. § 1227(a)(2)(D).

[48]    *See Chevron*, 467 U.S. at 843.

[49]    *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994).

reading of "released" is compatible with the "when . . . released" clause (because

the clause can be read as "when the alien is [released from arrest]"), the same is not

true of the "without regard" clause. There, the government's position makes no

sense. An alien cannot be "[released from arrest] on parole, supervised release, or

probation." To the contrary, release "on parole [or] supervised release" occurs

only after a custodial sentence (or a portion of a custodial sentence). The principle

of consistent meaning demands that "released" be construed that way in the "when

. . . released" clause as well.[50]

---

[50]     Even if the "released from arrest" construction were reconciled with
the phrase "released on probation, supervised release, or parole," the government
would still face a surplusage problem. If pre-conviction custody is enough to
satisfy the "when . . . released" clause, then every alien convicted of a qualifying
offense under section 236(c) will have been "released," because the definition of
"release" includes an event — pre-conviction custody — that necessarily precedes
conviction. This makes it difficult to explain the role played by the "without
regard to whether the alien is released on parole, supervised release, or probation"
clause. If *all* aliens convicted of a qualifying offense have necessarily been
"released," there is no reason to specify that particular *classes* of aliens — defined
by the form of state supervision into which they are released — are included in the
general set. *See Sacirbey v. Guccione,* 589 F.3d 52, 66 (2d Cir. 2009) (quoting
*Filler v. Hanvit Bank,* 378 F.3d 213, 220 (2d Cir. 2004)) ("A basic canon of
statutory interpretation . . . is to avoid readings that 'render statutory language
surplusage' or 'redundant.'"). *See also Cooper Indus. v. Aviall Svcs.,* 543 U.S.
157, 166 (2004) ("[Defendant's] reading would render part of the statute entirely
superfluous, something we are loath to do."). In this light, the "without regard"
clause more naturally sounds in a post-conviction rather than pre-conviction
understanding of release. On that construction, the clause would have a clear
purpose: to clarify that even aliens who are released from a custodial sentence into
another form of (non-custodial) state supervision are "released" for the purpose of
section 236(c).

The government's position also leads to a second "absurd conclusion."[51] If its interpretation of "release" were correct, the implication would be that section 236(c) obligates ICE "to take [] alien[s] into mandatory detention *before* [they have] definitively qualified for mandatory detention" on the basis of a conviction.[52] Apart from defying common sense, this would also give rise to the possibility of an alien "elud[ing] criminal punishment altogether, either by being [placed into immigration detention] so as to prevent the criminal trial from commencing, or by being removed from the United States before a criminal sentence was imposed or served."[53]

The government argues that this concern — the foundation of Judge Engelmayer's reasoning in *Staker v. Jones* — "rest[s] on a flawed premise."[54] According to the government, the notion that a "pre-conviction arrest[] [could] satisfy the release requirement," thereby triggering mandatory immigration detention, "fails to recognize that the language of [section 236(c)] also requires a

---

[51]     *Straker*, 986 F. Supp. 2d at 359.

[52]     *Id.* (emphasis added).

[53]     *Id.* at 358.

[54]     Government Memorandum of Law in Opposition to Habeas Corpus, at 21.

-17-

*conviction* for a qualifying offense."[55]  In other words, the government argues that Judge Engelmayer's position misses that the "obligation to detain a criminal alien pursuant to [section 236(c)] does not arise until the latter of [the alien's] conviction or his release from [criminal] custody."[56]

But the government's response does not truly resolve the problem.  If detention under section 236(c) must wait for a conviction, but "release" *precedes* conviction, why would the Attorney General be commanded to take aliens into custody "when [they are] released"?  In other words, why would a statute whose application depends on the presence of a conviction direct the immigration authorities to apply the statute before conviction could possibly have occurred?  This problem evaporates if "release" refers, instead, to release from a custodial sentence.  Because the latter necessarily occurs *after* a conviction, the policy of taking aliens into custody "when . . . released" makes perfect sense.[57]

---

[55]     *Id.* at 20.

[56]     *Id.* at 21.

[57]     The government also offers a policy argument in favor of construing the "when . . . released" clause to include post-arrest release.  According to the government, it would "run[] contrary to the statute's purpose" if mandatory immigration detention depended on "the nature of an underlying *sentence*" rather than "the nature of the underlying conviction," because it would mean that two aliens "convicted of the same underlying removable offense" would be "subject to differing immigration detention [] based solely on whether a judge sentenced [each alien] to a custodial or non-custodial sentence." *Id.* at 22.

I conclude, therefore, that Martinez was only "released" once within the meaning of section 236(c):   after his forty-one days in custody following his remand in 2004.   Accordingly, the delay between Martinez's release from criminal custody and the onset of immigration custody was nine and a half years — the period from September 2004 until March 2014.

### B.    Was Martinez Taken Into Custody "*When . . . Released*"?

Alternatively, Martinez argues that because he was not taken into custody "*when . . . released*," mandatory detention is inappropriate.   This argument turns on the proper construction of "when."   On the duty-triggering construction,

---

This argument misunderstands the goals of section 236(c).   The norm during removal proceedings — reflected in section 236(a) — is that aliens are entitled to individualized bond hearings. *See Lora*, 2014 WL 1673129, at *3 ("[I]ndividualized bond hearings are the norm and mandatory detention is the exception in section 1226") (citing *Castaneda v. Souza*, 952 F. Supp. 2d 307, 316 (D. Mass. 2013)). *See also Saysana*, 590 F.3d at 17 (describing mandatory detention as the exception to "the ordinary procedures for release on bond at the discretion of the immigration judge").   Section 236(c) carves out an exception to this norm for certain classes of aliens who either (1) present a heightened bail risk, or (2) pose a danger to the community. *See Demore*, 538 U.S. at 519 (identifying the question of whether an alien "present[s] an excessive flight risk or threat to society" as the key variable in immigration detention decisions). *See also Sylvain*, 714 F.3d at 160 ("Congress designed [section 236(c)] to keep dangerous aliens off the street").   Given these justifications for mandatory detention, it is hardly remarkable that section 236(c) would track sentencing disparities in addition to convictions.   If anything, the *government's* position is the remarkable one.   It would make detention mandatory for every alien convicted of a qualifying offense, without regard to manifest differences in dangerousness or flight risk.   That is not the calibrated detention scheme that Congress envisioned.

the Attorney General's mandatory detention power is indefinite.  On the time-limiting construction, by contrast, that power expires if it is not exercised within a reasonable window of time.  Martinez was taken into custody nearly *ten years* after his release from the 2004 remand.  If the time-limiting construction is correct, that delay is far too long to abide.[58]

Courts that have addressed this question have focused on a 2001 BIA opinion, *Matter of Rojas*, which appears to lend support to the duty-triggering construction.  Rojas was taken into immigration custody — under section 236(c) — two days after release from prison for a narcotics offense.  Rojas contested his mandatory detention on the theory that section 236(c) only applies if detention begins *immediately* after the termination of criminal custody.  In other words, because the immigration authorities waited two days to pick Rojas up, section 236(c) no longer applied.  The BIA disagreed with Rojas.  Reading the section

---

[58]     It is worth noting that even under the *government's* theory of "release," the minimum possible delay would be the time between (1) Martinez's 2008 arrest (leading to his 2012 conviction) and (2) the onset of removal proceedings — which is almost six years.  This, too, would violate the time-limiting construction of the "when . . . released" clause.  However, there is no need to resolve that question, given my holding that Martinez has only been "released" once within the meaning of section 236(c):  from his 2004 remand, almost ten years before removal proceedings began.

holistically, and in light of predecessor statutes,[59] the BIA concluded that "Congress was not attempting to restrict mandatory detention to criminal aliens taken immediately into [] custody [by ICE] at the time of their release from a state or federal correctional institution."[60]

The government maintains that *Rojas* warrants *Chevron* deference, and that it therefore compels the duty-triggering construction of section 236(c). In similar cases, some judges have agreed with this conclusion, and others have not. But even among those who have disagreed, the basic premise — that *Rojas* sets out a rebuttable presumption in favor of the duty-triggering construction — has gone unquestioned. Judges who have rejected the duty-triggering construction have done so only after determining that *Rojas* is unworthy of *Chevron* deference.[61]

These opinions misread *Rojas*. In reality, the BIA has not weighed in, one way or the other, on the tension between the duty-triggering construction and the time-limiting construction. In *Rojas*, the BIA rejected a third, wholly distinct, construction of section 236(c) — one that, in the BIA's words, would require

---

[59]     *See Rojas*, 23 I. & N. Dec. at 122-24 (tracing the history of section 236(c)).

[60]     *Id.* at 124.

[61]     *See, e.g.*, *Araujo-Cortes*, 2014 WL 3843862, at *5-8; *Lora*, 2014 WL 1673129, at *6-7.

-21-

aliens to be "taken immediately into [immigration] custody . . . at the time of their release from [prison]."[62] This construction, which could be labeled the "immediate transfer construction," is the inverse of the duty-triggering construction. Whereas the latter gives ICE blanket authority that never expires — it would sanction any mandatory detention that begins after the alien is released from custody, even decades later — the immediate transfer construction gives ICE almost *no* authority. It would proscribe any mandatory detention that begins after the precise moment of the alien's release, even just a few minutes later. Both of these constructions, however, are distinct from the time-limiting construction. The latter strikes a balance. It gives immigration authorities flexibility to take removable aliens into custody, while also requiring that custody begin within a reasonable time frame.

The government takes the view that *Rojas*, by rejecting the immediate transfer construction, supports the duty-triggering construction. But the actual opinion does no such thing. On the face of it, the BIA's rejection of the immediate transfer construction does not mean that the BIA endorsed the duty-triggering construction. If anything, the result in *Rojas* points the other way. There, the delay was only two days. That fact alone belies the notion that the BIA adopted a bright-line rule, justifying *any* delay in the onset of immigration detention, no

---

[62]     *Rojas*, 23 I. & N. Dec. at 124.

matter how long.  The more natural interpretation is that the BIA sought to ensure

that ICE has sufficient flexibility to carry out its statutory mandate.[63]  In doing so,

the BIA had no opportunity to address under what circumstances delay might

become unreasonable.

       The BIA's articulation of the line-drawing problem at the heart of the

immediate transfer construction supports this interpretation.  As the BIA explained:

"[I]t is not clear where the line would be drawn under [Rojas'] reading of the

statute.  Would mandatory detention apply only if an alien were literally taken into

custody 'immediately' upon release, or would there be a greater window of

perhaps 1 minute, 1 hour, or 1 day?"[64]  Minutes, hours, and days are a far cry for

the nine and a half years that elapsed here.  In light of the factual distinctions

between this case and *Rojas*, the most reasonable interpretation is that the BIA has

not addressed the more difficult question presently before this Court:  whether to

adopt the duty-triggering or the time-limiting constructions of section 236(c).

Therefore, *Chevron* does not apply.[65]

------------------------

     [63]    Rojas' argument leaves open the possibility that if an ICE official was
stuck in traffic, ICE's section 236(c) detention power might dissipate.

     [64]    *Rojas*, 23 I. & N. Dec. at 124.

     [65]    To be clear, the conclusion is not that *Rojas* is unworthy of *Chevron*
deference.  The conclusion is that *Chevron* is inapplicable in the first instance,
because *Rojas* is not on point with the question presented in this case.  *Cf. Araujo-*

-23-

From there, the textual analysis is simple.  The duty-triggering construction takes "when" to mean any time after.  But ordinary usage undermines this view.  In everyday English, "when" clearly "connote[s] immediacy."[66]  The best that can be said for the duty-triggering construction is that the word "when" is ambiguous.  In *Hosh v. Lucero*, for example, the Fourth Circuit pointed out that "'when' . . . can be read, on the one hand, to refer to 'action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun . . . [But on] the other hand, 'when' can also be read to [mean] 'at or during the time that,' 'while,' or 'at any or every time that.'"[67]

But even if these alternative definitions overcome the ordinary usage problem, they still fail to bolster the duty-triggering construction of section 236(c).  At best, the Fourth Circuit's analysis casts doubt on the immediate transfer construction:  it suggests that "when . . . released" does not (necessarily) refer to the *exact moment* of release.  But for the same reasons set forth above, to say that the immediate transfer construction is wrong is *not* to say that the duty-triggering

---

*Cortes*, 2014 WL 3843862, at *9 n.7 (arguing that *Chevron* does not apply to *Rojas* on other grounds).

[66]     *Straker*, 986 F. Supp. 2d at 354.

[67]     680 F.3d at 379-80 (internal citations omitted).  *Accord Straker*, 986 F. Supp. 2d at 355.

construction is right.  Nor is it to say that the time-limiting construction is wrong.

In fact, one of the alternative definitions offered by the Fourth Circuit — "at or

during the time that" — actually lends itself to the time-limiting construction.

Even if "when" does not mean "as soon as," it can still mean "at or during the time

that":  it can still carry an implicit requirement of temporal proximity.  That is

exactly the interpretation that Martinez urges here.

　　　　　To give "when" its ordinary meaning also serves the statute's

underlying purpose.  Read in tandem with section 236(a), section 236(c) designates

certain removable aliens for a more stringent detention scheme.  As the Supreme

Court has explained, the imposition of different forms of detention on different

classes of removable aliens stems from concern that some aliens "present an

excessive flight risk or threat to society."[68]  Section 236(c) was Congress's solution

to this concern.[69]  As far as dangerousness is concerned, there is often very little

evidence that a removable alien ever *was* dangerous, much less that he continues,

years after release and reincorporation into the community, to "threat[en] society."

Furthermore, "[b]y any logic, it stands to reason that the more remote in time a

conviction becomes and the more time after a conviction an individual spends in a

---

[68]　　*Demore*, 538 U.S. at 519.

[69]　　*See id.* at 518-21.

community, the lower his bail risk is likely to be."[70]

Finally, the Supreme Court has made clear that "ambiguities in deportation statutes" are to be construed "in favor of the alien."[71]  Therefore, even if the word "when" can plausibly be read to mean "at any point after," this Court must adopt the interpretation of section 236(c) that favors removable aliens:  the time-limiting construction.[72]  In Martinez's case, the delay was plainly too long.

## C.    Due Process

Martinez's detention also raises constitutional concerns.  Martinez has spent nearly six months in mandatory detention.  This stretches well beyond the "month and a half [to] five months" of pre-removal confinement predicted in Demore,[73] and it also runs up against the six-month rule set forth in Zadvydas.[74]

On similar facts, some judges (in this District and elsewhere) have

---

[70]    Saysana, 590 F.3d at 17-19.

[71]    INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987).

[72]    The Fourth Circuit has declined to follow the rule of lenity in this context because — in its view — the rule clashes with the requirements of Chevron.  See Hosh, 680 F.3d at 383.  Even assuming the Fourth Circuit is right that "the rule of lenity and Chevron pull in opposite directions," and even assuming that it has resolved the tension correctly, there is no need to reach this issue here, because I conclude that Rojas does not warrant Chevron deference.

[73]    Demore, 538 U.S. at 530.

[74]    See Zadvydas, 533 U.S. at 701.

held that pre-removal detention exceeding six months violates due process.[75] This conclusion — while understandable — is hard to square with Supreme Court precedent.  Although *Demore* certainly announces an expectation that pre-removal detention often lasts for fewer than five months, the opinion also makes it clear that the Due Process concern at the heart of *Zadvydas* — the specter of indefinite detention — is more attenuated in the context of pre-removal detention.  Indeed, the alien in *Demore* had *been* in detention for six months, but the Court nevertheless declined to grant his habeas petition.  This makes it difficult to conclude that Martinez's detention of the same length violates due process.[76]

Nevertheless, it would be wrong to conclude that the principle at play in *Zadvydas* and *Demore* — the prohibition against "indefinite" constraints on liberty — is inapplicable here.  In the context of speedy trial claims, the Supreme Court has rejected the argument that delay of prosecution imposes no limitation on liberty simply because, during the period of delay, a defendant is free to "go

———————————

[75]     *See Monestime v. Reilly*, 704 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2010) (holding that eight months in pre-removal detention, without a showing of likely imminent release, violated due process). *See also Araujo-Cortes*, 2014 WL 3843862, at *9-14.

[76]     *See Adler v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 4093, 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009) (holding that fifteen months in pre-removal custody is not unconstitutional under *Demore*). *See also Johnson v. Orsino*, 942 F. Supp. 2d 396 (S.D.N.Y. 2013) (same).

whithersoever he will."[77]  As the Court explained in *Klopfer v. State of North Carolina*, even if a person retains many important freedoms during the period prior to prosecution, "[its] pendency . . . may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations, and participation in unpopular causes."[78]  Furthermore, it is irrelevant whether the government finds it "convenient" to delay the prosecution.[79]  Under certain circumstances, delay in the onset of prosecution can give rise to independent due process harm.

  The same reasoning should apply to removal proceedings.  Living in the shadow of mandatory detention that could begin at any moment invariably takes its toll.  In the speedy trial context, the Supreme Court has used the language of "anxiety" to describe the constitutional harm at work.  It has spoken not only of the defendant's anxiety, but also of the anxiety that the ongoing threat of

---

[77] *Klopfer v. State of North Carolina*, 386 U.S. 213, 221 (1967).  *Accord United States v. Marion*, 404 U.S. 307, 320 (1971); *Smith v. Hooey*, 393 U.S. 374, 377 (1969) (extending the logic of *Klopfer* to prisoners facing prosecution for a distinct offense).  For a more recent application of the principle, see *Doggett v. United States*, 505 U.S. 647 (2002) (holding that an eight and a half year delay between indictment and arrest violated the speedy trial guarantee).

[78] *Klopfer*, 386 U.S. at 221-22.

[79] *United States v. Haggett*, 438 F.2d 396, 401 (2d Cir. 1971).

prosecution can create for his "family and [] friends."[80]

       This is especially true in the immigration context.  As of 2009, ICE detained nearly four hundred thousand aliens ever year, two-thirds of whom are subject to mandatory detention.[81]  In many cases, aliens taken into custody under section 236(c) have long since "reintegrated into [their communities],"[82] and their mandatory detention leaves family members emotionally and economically devastated.[83]  Furthermore, the magnitude of delay in Martinez's case — nearly a decade — is not an isolated example.  ICE frequently waits many years to take aliens into custody under section 236(c),[84] despite the fact that, with so much time

---

[80]    *Marion*, 404 U.S. at 320.

[81]    *See* Dora Schriro, U.S. Department of Homeland Security, Immigration and Customs Enforcement, *Immigration Detention Overview and Recommendations 2* (Oct. 6, 2009).

[82]    *Araujo-Cortes*, 2014 WL 3843862, at *1.  *Accord* Brief for *Amici Curiae* in Support of Petitioner-Appellant, *Gomez v. Napolitano*, No. 11-2682 (2d Cir.) ("Amicus Brief"), available at http://immigrantdefenseproject.org/wp-content/uploads/2012/02/11-2682-Gomez-v -Napolitano_Amici-Curiae-Brief_08-19-2011.pdf, at 11-15.

[83]    *See* Amicus Brief at 20-24.

[84]    *See Monestime* (ICE placed alien into mandatory detention eight years after his removal offense); *Araujo-Cortes* (five years); *Dang v. Lowe*, No. 10 Civ. 446, 2010 WL 2044634 (M.D. Pa. May 20, 2010) (ten years).

elapsed, they often pose little to no risk of flight,[85] and even less danger to "public safety."[86]  Unsurprisingly, once habeas petitions are granted, and bond hearings are afforded, many aliens originally taken into custody under section 236(c) are released.[87]

In short, the government's construction of section 236(c) would confer limitless authority on the Attorney General to pluck immigrants from their families and communities with no hope of release pending removal — even decades after criminal confinement.  This construction threatens immigrants' statutory and constitutional rights.

## VI.   CONCLUSION

Although Martinez was "released" within the meaning of section 236(c), he was not taken into custody "*when* [he was] released."[88]  Furthermore, even if his detention could be reconciled with the statutory language, constitutional concerns remain.  Martinez has the right — under section 236(a) of the INA, as

---

[85]      *See Saysana*, 590 F.3d at 17-18 ("By any logic, it stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be."). *Accord Garcia v. Shanahan*, 615 F. Supp. 2d 175, 183 (S.D.N.Y. 2009).

[86]      *Monestime*, 704 F. Supp. 2d at 458. *See* Amicus Brief at 11-15.

[87]      *See* Amicus Brief at 15-18.

[88]      8 U.S.C. § 1226(c)(1) (emphasis added).

well as the Due Process Clause of the Fifth Amendment — to have an impartial adjudicator decide if he may be released during the pendency of his removal proceedings.  His request for a bond hearing is GRANTED.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            October 8, 2014

-31-

- Appearances -

**For Plaintiff:**

Paul B. Grotas, Esq.
450 Seventh Avenue, Suite 2303
New York, NY 10123
(646) 581-9537

**For Defendants:**

Patricia L. Buchanan
Assistant U.S. Attorney
U.S. Attorney's Office for the Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-3274